**Appeal No.: 23-10454-BB**

IN THE

**UNITED STATES COURT OF APPEALS**

FOR THE ELEVENTH CIRCUIT

**SHERLYN JOHNSON**
*Plaintiff-Appellant,*
**V.**
**U.S. SECRETARY OF THE ARMY**
*Defendants-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
1:22-CV-00036-CLM

**APPELLANT'S INITIAL BRIEF**

Nathaniel J. Middleton
3951 Snapfinger Pkwy, Suite 332
Decatur, GA 30035
(404) 286-4441 *Office*
(404)448-4490 *Fax*
nathanieljmiddleton@gmail.com

*Attorney for Plaintiff-Appellant*

**C-1**

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

COMES NOW Plaintiff-Appellant Sherlyn Johnson, by and through the

undersigned counsel, pursuant to Federal Rule of Appellate Procedure 26.1 and

Rule 26.1 of this Court, hereby states that the following individuals and entities

have an interest in the outcome of this case and/or appeal:

1. Sherlyn Johnson – Plaintiff /Appellant;
2. Nathaniel Middleton, Esq. – Attorney for Appellant;
3. U.S. Secretary of the Army - Defendant/Appellee;
4. Michael Billingsley, Esq. – Attorney for Defendant/Appellee;
5. Elizabeth Holt, Esq. – Attorney for Defendant/Appellee;
6. Amanda M. Donat, Esq. – Attorney for Defendant/Appellee;
7. Prim F. Escalona, Esq. – Attorney for Defendant/Appellee;
8. U.S. Attorney Service - Northern District of Alabama; and
9. Hon. Corey L. Maze

Plaintiff-Appellant Sherlyn Johnson further states that, she is not aware of any
information or parties required to be disclosed pursuant to Federal Rule of
Appellate Procedure 26.1.

**C-2**

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff/Appellant submits that oral arguments will assist the Court's disposition of this case as it will assist in focus and test the basis and validity of the contentions of the Parties.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES AND
CORPORATE DISCLOSURE STATEMENT…………………………………C-1

STATEMENT REGADING ORAL ARGUMENT…………………………..C-2

TABLE OF CONTENTS……………………………………………………..i

TABLE OF CITATIONS……………………………………………………..iii

STATEMENT OF JURISDICTION………………………………………….iv

STATEMENT OF THE ISSUES……………………………………………..1

STATEMENT OF THE CASE………………………………………………..2

    I.     Course of Proceedings and Disposition Below……………………..2

    II.    Statement Of The Facts……………………………………………..3

    III.   Standard Of Review……………………………………………….7

    IV.   Argument………………………………………………………….8

        A. The District Court erred in concluding that the District Court lacked
           Subject Matter Jurisdiction in Appellant's Case……………….. 8

        B. The District Court erred in concluding that the Appellant failed to
           state a claim upon which relief can be granted…………………10

        C. Whether Appellant Failed to Exhaust Her
           Discrimination Claims……………………………………………..15

        D. Whether Appellant's Retaliation Claim fails because she failed to
           timely file her formal EEO Complaint…………………………16

    E. Application of the McDonnell Douglas Standard...................17

    F.  Comparators................................................................18

    G. Evidence of Pretext.....................................................19

V.    Conclusion..................................................................20

    CERTIFICATE OF COMPLIANCE.....................................21

    CERTIFICATE OF SERVICE...........................................22

ii.

# **TABLE OF CITATIONS**

Page

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563 n.8,
127 S. Ct. 1955, 1969, 167 L.Ed.2d 929, 945 (2007)............................... 10

*Cf. Scheuer v. Rhodes*, 416 U.S. 232, 236,
94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)............................................... 9

*Eldeeb v. Chertoff*, 619 F. Supp. 2d 1190,
1192, 21 Fla. L. Weekly Fed. D 18 (M.D. Fla. 2007).............................. 9

*Land v. Dollar*, 330 U.S. 731, 735 (1947)........................................... 7

*Lawrence v. Dunbar*, 919 F.2d 1525 (11th Cir. 1990)............................... 7

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792,
93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).............................................. 16

*Odyssey Marine Exploration, Inc.* v. *Unidentified Shipwrecked Vessel*,
657 F.2d 1159, 1170 (11th Cir. 2011)................................................. 7

*OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002)................... 8

*Price v. M & H Valve Co.*, 177 F. App'x 1, 4 (11th Cir. 2006)..................... 16

*Stalley v. Orlando Ref'l Healthcare Sys. Inc.*,
524 F.3d 1129, 1232 (11 Cir. 2008).................................................. 7

iii.

## **STATEMENT OF JURISDICTION**

This Court has jurisdiction under 28 U.S.C. § 1291 because this is an appeal of a final decision of the United State District Court for the Northern District of Alabama.

## STATEMENT OF THE ISSUES

1. Whether the District Court erred in concluding that the District Court lacked subject matter jurisdiction in Appellant's Case;

2. Whether the District Court erred in concluding that the Appellant failed to state a claim upon which relief can be granted;

3. Whether Appellant failed to exhaust her Discrimination Claims; and

4. Whether Appellant's Retaliation Claim fails because she failed to timely File her formal EEO Complaint.

## STATEMENT OF THE CASE

### I.    COURSE OF PROCEEDINGS AND DISPOSITION BELOW

This case presents the opportunity for this Court to correct the District Court's erroneous decision to grant Appellee's Motion for Dismissal.

Plaintiff-Appellant Sherlyn Johnson, an African-American Female, (hereinafter, "Appellant") filed her Complaint on January 7, 2022, to redress the Defendants' violation of plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et - seg.; and the Civil Rights Act of 1991, 42 U.S.C. 1981a. [Doc. 1].  On June 28, 2022, Appellant filed an Amended Complaint [Doc. 20] and on July 27, 2022, Appellant filed a Third Amended Complaint. [Doc. 24].

Subsequently, on August 17, 2022, Appellee's filed their Motion to Dismiss. [Doc. 25].  On September 1, 2022, Appellant filed her Response to Appellee's Motion to Dismiss. [Doc. 27].  On September 29, 2022, Appellee's filed their Defendant's Reply In Support Of Her Motion To Dismiss Plaintiff's Third Amended Complaint. [Doc. 30].  On January 17, 2023, the District Court entered a Memorandum of Opinion. [Doc. 31] and an Order granting Appellee's Motion to Dismiss. [Doc. 32].

## II.    **STATEMENT OF FACTS**

Appellant pursued her claims against Appellees under the Federal Tort Claims Act, 28 U.S.C. sections 1346(b), et seq. and 2671, et seq. Additionally and concurrently, her claim was brought under Title VII of the Civil Rights Acts of 1964, as amended, Section 701, et seq, 42 U.S.C. subsection (e) of section 2000, et seq,. [Doc. 24, p. 4.]

On or about February 2018, Appellant initially was not selected by the Anniston Army Depot (hereinafter "Agency") for a Heavy Mobile Equipment Mechanic Position – Wage Grade 10 – (hereinafter "Position') but, after she complained to the Chain of Command, her resume was revaluated and rescored and she was selected for the Position. [Doc. 24, p. 10.]

On or about July 2018, Appellant was injured while performing the duties of her job. Appellant received medical attention and was removed from duty for approximately 3 weeks. Since that incident, Appellant was continuously harassed about her work related injury. The Agency's managers continued to report that Appellant's injury was not work related in order to avoid properly documenting / reporting the accident. It was determined by the Industrial Hygiene Department at the Agency that the components which Appellant was instructed to assemble were over 45 lbs and too heavy for one person to lift without a lifting device or assistance and recommended that a lifting device be put in place and used for that 2

3

man lift. However, on or about July 19, 2020 there was no lifting device and only one person continues to lift the oil tanks. The medical documents which Appellant submitted to her managers were not forwarded. While under doctor's care and on lifting restriction, Christopher Benefield (Appellant's immediate supervisor at the time) stated that Appellant should lift the kits with her right side, which was much heavier than Appellant's restrictions. [Doc. 24, p. 11.]

On or about April 1, 2019, Appellant was unlawfully retaliated against for her prior protected EEO activity when, on April 1, 2019, she received notification from the Agency that she would be suspended for two days effective April 9, 2019, for Discourtesy and Failure to Properly Request Leave ("AWOL"). [Doc. 24, p. 12.]

The AWOL action against Plaintiff was a direct act of reprisal by the Agency due to Appellant's prior EEO complaints against Agency managers Rodney Gaither and Christopher Williams. Additionally, in an effort to validate its AWOL action against Appellant, the Agency solicited the fallacious testimony of Agency employees Christopher Benefield and Kenneth Beason. Shortly after providing their false statement against Appellant, Mr. Benefield and Mr. Beason received promotions from the Agency. [Doc. 24, p. 13.]

4

On or about August 2019, Christopher Benefield lied about Appellant causing her to be charged AWOL, and the AWOL was subsequently removed. [Doc. 24, p. 14.]

On or about July 27, 2018, Appellant submitted a U.S. Department of Labor Office of Worker's Compensation Claim ("OWCP") for compensation and on August 7, 2019 and August 28, 2019, Lacy Beyer, an Agency employee, informed Christopher Benefield of the requirement for Appellant to use her own leave for doctor's appointments, causing Appellant to lose pay and duty hours. Said action against Appellant was a deviation from the Agency's own policy. [Doc. 24, p. 15.]

Between August 2018 until September 2019, Agency's managerial staff untruthfully reported to Appellant's senior supervisors that she was not participating in the workman's compensation claim process. [Doc. 24, p. 16.]

On or about 17 December 2019, Christopher Benefield falsely accused Appellant of and charged Appellant with being AWOL for 6 minutes. This occurred even though other employees conducted the same behavior and were never penalized. [Doc. 24, p. 17.]

On or about January 5, 2020, Appellant attended an Initial Teleconference with her attorney at the time and an EEOC Administrative Judge (EEOC No. 420-2020-00251X, Agency ARANAD19MAY01856), and on approximately January 6, 2020, Appellant was notified that her Temporary Position, which was an

5

accommodation for a permanent work-related injury/impairment, would end and she would be returned to the duties of a Heavy Mobile Equipment Repairer, WG-08, which duties were beyond her medical restrictions and continue to place her at risk for further injury. [Doc. 24, p. 18.]

On or about January of 2020, Appellant requested Advanced Leave. The Agency failed to timely respond to Appellant's request for Advanced Leave causing Appellant to take Leave Without Pay. [Doc. 24, p. 19.]

On or about January of 2020, Appellant was diagnosed with PTSD anxiety due to extreme hostile work environment. She notified Christopher Benefield and provided him a copy of the FMLA medical documentation stating the diagnosis (which Benefield provided approval for the FMLA) as well as requested Advanced Annual Leave. Appellant then submitted a request for Advanced Annual Leave several times as well and contacted Christopher Benefield and Jason Adam Harvey, an Agency managerial staff, several times to request a status of her request. However, each time Appellant inquired about her request, they failed to give her a status update and Appellant went into a Leave Without Pay status and did not receive a response or pay for approximately 50 to 60 days. [Doc. 24, p. 20.]

After Appellant's temporary promotion expired on June 25, 2020, her temporary promotion was not extended and she was not promoted or given a permanent position. Other non-female or Black employees, with less qualification

6

were promoted. [Doc. 24, p. 21.]. This was yet another example of the Agency not adhering to their own policies and procedures.

On or about July of 2020, after months of going back and forth with the Agency about Appellant's OWCP claim forms, Appellant discovered that the forms were not submitted, resulting in her not receiving medical treatment approval, having to use her own insurance, paying for out-of-pocket expenses, being unable to accrue leave and being in Leave Without Pay Status. [Doc. 24, p. 22.]

The Agency's managers submitted documents to the Department of Labor that were changed and/or amended without Appellants consent or knowledge, gave Appellant different documents and did not forward relavent documents to the Department of Labor.  This evidenced the Agency's continued attempts to harass and intimidate Appellant. [Doc. 24, p. 23.]

Over the past several years, Appellant was belittled, humiliated, embarrassed, placed in fear and unfairly critiqued by the Agency's management. Said treatment caused Appellant substantial emotional distress. [Doc. 24, p. 24.]

### III.    STANDARD OF REVIEW

In reviewing the district court's decision to grant a Motion to Dismiss for lack of standing pursuant to Rule 12(b)(1), the legal conclusions of the district

court are reviewed de novo. *Stalley v. Orlando Ref'l Healthcare Sys. Inc.*, 524 F.3d 1129, 1232 (11 Cir. 2008).

## IV.    ARGUMENT

### A. The District Court erred in concluding that the District Court lacked Subject Matter Jurisdiction in Appellant's Case.

When considering a challenge to a court's jurisdiction under Fed. R. Civ. P. 12(b)(1), a court ordinarily need not limit its inquiry to the facts as pled in the complaint. *Land v. Dollar*, 330 U.S. 731, 735 (1947). Rather, "[t]he court may inquire by affidavits or otherwise into the facts as they exist." *Id.* at 735, n.4. A federal court is able to take such action because it must assure itself that it has jurisdiction over the case, and it may even resolve factual disputes in doing so. *Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.2d 1159, 1170 (11th Cir. 2011).

Attacks on subject-matter jurisdiction under Rule 12(b)(1) come in two forms: facial attacks, which take the factual allegations in the complaint as true and determine whether the plaintiff has sufficiently alleged a basis of subject-matter jurisdiction; and factual attacks, which challenge the existence of subject-matter jurisdiction in fact based on matters outside of the pleadings. *Lawrence v. Dunbar*, 919 F.2d 1525 (11th Cir. 1990). In determining whether subject-matter jurisdiction exists—regardless of whether that challenge comes as a facial or factual attack—

8

the burden is on the plaintiff to establish jurisdiction. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

**Factual attacks**

In this matter before Court, Appellant directs the Court to the second prong in under *Lawrence*. A review of the factual matters in this case, Appellant asserted that "This action is brought on behalf of Sherlyn Johnson to redress the Defendants' violation of plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et - seg.; and the Civil Rights Act of 1991, 42 U.S.C. 1981a." [Doc 24. p. 1]. Appellant referenced Reprisal in her Formal Complaint of Discrimination – Please refer to Exhibit A of Appellant's Complaint. Secondly, in her EEOC Appeals with the U.S. Equal Employment Opportunities Commission Office of Federal Operation, the Appeals Court clearly noted that "[Complainant] [alleged] employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. 2000e et seg. – Please refer to Exhibit B of Appellant's Complaint. Even though Appellant's chosen language highlighted 42 U.S.C. § 1981, the basis and crux of her argument pertained to violations of 42 U.S.C. 2000e et seg. (Title VII). As noted in *Lawrence* "Factual attacks, 'on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered'". When a factual

9

attack on subject matter jurisdiction implicates an element of the cause of action, the proper course of action is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of a plaintiff's case. *Eldeeb v. Chertoff*, 619 F. Supp. 2d 1190, 1192, 21 Fla. L. Weekly Fed. D 18 (M.D. Fla. 2007). A Fed. R. Civ. P. 12(b)(1) otion to dismiss for lack of subject matter jurisdiction factual attack requires a court to determine if it has jurisdiction to even hear the case itself. In order to accomplish this, a court is allowed to look outside the pleadings to things such as testimony and affidavits. *Eldeeb*.

In their Order, the District Court recognized the fact that "42 U.S.C. 2000e et seg ("Title VII) provides an express waiver of sovereign immunity for claim brought be federal employees"; however, the Court failed to take into account the Appellant's Complaint in its totality, including the attached Exhibits.

## B. The District Court erred in concluding that the Appellant failed to state a claim upon which relief can be granted.

When a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder. *Cf. Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a district court weighing a motion to dismiss asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer

evidence to support the claims"). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8, 127 S. Ct. 1955, 1969, 167 L.Ed.2d 929, 945 (2007).

As presented herein, there exist genuine issues of material facts that contradicts the Defendant's arguments. A fact-finding effort will clearly establish that the Defendant took an adverse employment action against Appellant and said action was an attempt by the Appellees to harass and punish her for her prior EEO activity.

**AWOL Allegation**

On September 27, 2018, the Agency issued Appellant a three (3) workday suspension for the offenses of Discourtesy and Failure to Properly Request Leave resulting in a charge of Absent Without Leave (AWOL). During the Report of Investigation (hereinafter "ROI") the following questions were posed to the Plaintiff regarding her suspension:

**Question: "Did you commit the misconduct for which you were suspended?" (ROI p 268).**

*Answer: "I did not commit the misconduct as stated, the statements made are false, I did not use vulgarity (curse) nor was I disrespectful or discourteous however, the employees which wrote those statement have received several promotions shortly after writing the statements."* (ROI p 268).

11

The record will show that the employees who made the alleged false statements were granted a financial benefit in the form of promotions. This further corroborates the Plaintiff's contentions of bias and desperate treatment.

**Question: "If you did not commit the misconduct, what is your version of what occurred?"** (ROI p 268).

**Answer:**

*"On July 18, 2018, approximately after 8 am I submitted a request for leave via email to Rodney Gaither (supervisor)."*

*" Upon my return to work on July 19, 2018, (as I walked pass his office approximately 7:20 am) Mr. Gaither gestured and asked what happened to me yesterday? I stated that I sent a request for leave via email. Mr. Gaither stated that he didn't get it. I said ok. I then went to my work station to check my email, however I could not access the email. I opened my ANAD email, submitted and additional request for leave for 7/18/2018 (until I could access my personal email and see what actually happened) and noticed that emails in the out box which were I then opened to find that correspondence, which I sent days prior to, were still in the out box one of which was a response to Ms. Susan Bennett. I then contacted Ms. Bennett and apologized*

12

*for the delay as well as explained the document had been in the email out box and I forwarded."*

*"As I returned to my work station Rodney Gaither approached me on the shop and asked where was the Request for Leave, then stated ( in a disruptive manner) that Benefield said I left at 5:00 on 7/17/18. He further stated I knew then that I was wasn't coming in when left at 5pm why didn't I notify Benefield."*

*"I responded that I did not leave at 5pm I left at 5:17pm after break and I notified Benefield that I was leaving as well as the time I was leaving, however before I could finish my statement, Rodney walked away."*

*"I continued to work when I finished, I went to the office. No one was in the office. As I left the doorway I noticed Benefield a few feet away and asked if he knew where Rodney was. He responded. I then asked if he told Rodney that I left at 5:00pm. Benefield hesitated stating well…uhm, I then repeated that I left at 5:17 and as I left he was outside on the cellphone as I advised that I was leaving and of the time. As I was talking Rodney walked up and I went to the office as well. I then stated that I did not know the day prior to my absence because (my grandson was in my custody at the time) was sick when I picked him up from summer camp 7/17 after work. Therefore I had*

13

*no way of knowing while I was at work (prior to my picking him up)"*. (ROI pp 268 - 269).

It's imperative that this Court takes into consideration the Agency's non-compliance with their own policies and procedures. As such, Complainant submits the following:

1. Article 9, Leave, Section 2(b) of the Negotiated Agreement between Anniston Army Depot (ANAD) Management and AFGE 1945 (hereinafter the "Agreement") does require employees to furnish notice to the Employer by telephone or other means as soon as possible, but normally not later than two hours after the beginning of their scheduled work shift; ***however***, the Agreement does provide an exception for unique circumstances. With regards to unique circumstances the Agreement states: ***"…Employer agrees to give consideration to an employee who, because of special or unique circumstances, is unable to meet these requirements."*** (ROI p 237).

As stated prior by Appellant, she had a family emergency pertaining to her grandson – who she maintained legal custody over - and said circumstance fell within the exception of the Agreement. The Agency's failure to adhere to its own policies and procedure is a direct violation of the Agreement. The record will show that the Agency had a common

14

practice of doing a "wellness check" on absent employees to verify their whereabouts or verify their health status; however, Appellant was never afforded the same courtesy. Appellant has been employed with the government in excess of twenty two (22) years and maintained an exemplary record. She had never failed to report for duty without requesting leave and/or giving notification. (ROI p 269).

2. Appellant, as per her statement in the Investigation, at no time on or before July 26, 2018, did the Agency inform or notify Appellant of the charges of AWOL and Discourtesy that she was penalized for. Appellant's first knowledge of the Agency's disciplinary action was through a conversation with Mr. Gaither – an Agency managerial staff member. The Agency never gave her notice of the pending charges until April 1, 2019, almost a year after the incident occurred. This is yet another example pertaining to this matter where the Agency has failed to comply with their own policies and procedures.

The Agency adverse actions towards Appellant were directly related to her prior EEO activities and her position as a Union Representative. She should have been afforded the same procedural courtesy of a wellness check and immediate notice of the Disciplinary Action as other employees were afforded.

15

### C. Whether Appellant Failed to Exhaust Her Discrimination Claims

In their Motion, the Appellees contends that Appellant failed to exhaust her administrative remedies and only checked "Reprisal" on her EEO Complaint and did not mention race or gender in her EEO Complaint; however, Plaintiff did in fact mention "race" and "gender" in her EEO Complaint. Please refer to Exhibit A of Appellant's Complaint– EEO Complaint Documents – which establishes and shows that Appellant selected the appropriate discrimination basis. Appellant had met the conditions precedent to establish a civil action against Appellees. Additionally, Appellant's claims were timely filed within 90 days of receipt of the decision of the U.S Equal Employment Opportunity Commission Appeal No. 2021002606, Hearing No. 420-2020-00251X and Agency No. ARANAD19MAY01856. Please refer to Appellant's Complaint Exhibit B and the EEOC's decision attached thereto on Exhibit C.

### D. Whether Appellant's Retaliation Claim Fails Because She Failed to Timely File Her Formal EEO Complaint.

Before a plaintiff may pursue a Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., discrimination claim, he first must exhaust his administrative remedies. To exhaust his remedies, the plaintiff must file a timely charge of discrimination with the Equal Employment Opportunity Commission. 42 U.S.C.S. § 2000e-5(b). To be timely within a non-deferral state, such as Alabama,

it must be filed within 180 days of the last discriminatory act. 42 U.S.C.S. § 2000e-5(e)(1). *Price v. M & H Valve Co.*, 177 F. App'x 1, 4 (11th Cir. 2006). Appellant received her notice of Right to File on June 14, 2019, but the EEO Office did not receive her Formal Complaint of Discrimination until July 18, 2019, 34 days later; however, Appellant's filing was within the mandated time period established by 42 U.S.C.S. § 2000e-5(e)(1).

**E. Application of the McDonnell Douglas Standard**

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) the Court set-out the evidential standard and burden of proof required by a Claimant in a Title VII action. To wit, "[t]he complainant in a trial under Title VII of the Civil Rights Act of 1964 carries the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection.

Applying the *McDonnell Douglas* standard, Appellant shows the following:

a. Appellant is an African American Female;

17

b.  Appellant applied and was qualified for a job for which the employer was seeking applicants. After Appellant's temporary promotion expired on June 25, 2020, her temporary promotion was not extended and she was not promoted or given a permanent position.  Other non-female or Black employees, with less qualification were promoted. [Doc. 24, p. 21.].

c.  Although having been awarded the temporary position and being more than adequately qualified for the Position, Appellant was denied promotion. Appellant successfully completed the temporary promotion assignment and it was common practice by the Agency to promote the temporary assigned employee to a permanent position; however, given Appellant's prior EEO activity as a Union Representative, the Agency continued their reprisal discriminatory acts against Appellant and refused to promote her.

d.  The Agency promoted a non-female and/or non-Black employee with less qualification. The Individual who received the promoted position, did not serve in the position and was less qualified than Appellant.

**F. Comparators**

As averred to prior herein, Appellant can show several instances in which other employees at the Agency were treated differently:

a.  On or about 17 December 2019, Christopher Benefield falsely accused Appellant of and charged Appellant with being AWOL for 6 minutes.  This

18

occurred even though other employees conducted the same behavior and were never penalized. [Doc. 24, p. 17.];

b.  On or about July 27, 2018, Appellant submitted a U.S. Department of Labor Office of Worker's Compensation Claim ("OWCP") for compensation and on August 7, 2019 and August 28, 2019, Lacy Beyer, an Agency employee, informed Christopher Benefield of the requirement for Appellant to use her own leave for doctor's appointments, causing Appellant to lose pay and duty hours. Said action against Appellant was a deviation from the Agency's policy. [Doc. 24, p. 15.]; and

c.  It was common practice for the Agency to promote temporary position assignments to a permanent position. Again, as stipulated prior herein, Appellant was not afforded the same treatment and was denied a promotion due to the Agency's pretextual discrimination towards her.

**G. Evidence of Pretext**

In addition to the disparate treatment between Appellant and her similarly situated comparators, Appellee's violated their own internal policy. Article 9, Leave, Section 2(b) of the Negotiated Agreement between Anniston Army Depot (ANAD) Management and AFGE 1945 (hereinafter the "Agreement") does require employees to furnish notice to the Employer by telephone or other means as soon as possible, but normally not later than two hours after the beginning of their

19

scheduled work shift; ***however***, the Agreement does provide an exception for unique circumstances. With regards to unique circumstances the Agreement states: ***"…Employer agrees to give consideration to an employee who, because of special or unique circumstances, is unable to meet these requirements."*** (ROI p 237).

As stated prior, Appellant had a family emergency pertaining to her grandson and said circumstance fell within the exception of the Agreement. The Agency's failure to adhere to its own policies and procedure is a direct violation of the Agreement. The record will show that the Agency had a common practice of doing a "wellness check" on absent employees to verify their whereabouts or verify their health status; however, the Appellant was never afforded the same courtesy.

## V.    CONCLUSION

The District Court should have concluded that Jurisdiction in Appellant's case was proper based on her factual allegations. Additionally, Appellant presented viable issues of material facts to withstand a Motion of Dismissal, exhausted her administrative remedies and timely filed her formal EEO Complaint.  As such for said reasons, Appellant ask this Court to reject the District Court's Order granting Appellee's Motion for Dismissal and allow Appellant's Case to proceed to trial.

## **CERTIFICATE OF COMPLIANCE**

Counsel for Appellant hereby certifies that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f) and 11th Cir. R. 32-4, this document contains 4,383 words.

Respectfully submitted this 26th day of June 2023.

*/s/ Nathaniel J. Middleton*
Nathaniel J. Middleton, Esq.
Georgia State Bar No.: 504909

Attorney for Appellant
**The Law Office of Nathaniel J. Middleton**
3951 Snapfinger Parkway, Suite 332
Decatur, Georgia 30035
(404) 286-4441 (Office)
(404) 996-6788 (Fax)
nathanieljmiddleton@gmail.com

## CERTIFICATE OF SERVICE

I certify that on this 26th day of June, 2023, I electronically filed the

foregoing via CM/ECF system with the United States Court of Appeal for the

Eleventh Circuit which will provide notice to the following counsel of record:

Michael Billingsley
Elizabeth Holt
Amanda M. Donat
Prim F. Escalona
U.S. Attorney's Office
1801 4th Avenue North
Birmingham, AL 35203


Respectfully submitted, this 26th day, June 2023.

/s/ Nathaniel J. Middleton
Nathaniel J. Middleton
Georgia Bar No. 504909
3951 Snapfinger Pkwy, Suite 332
Decatur, GA 30035
(404) 286-4441 *Office*
(404)448-4490 *Fax*
nathanieljmiddleton@gmail.com
*Attorney for Plaintiff/Appellant*